**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY SUBPOENA TO ROBERT JOYCE,<br><br>Non-Party Movant,<br><br>TP-LINK SYSTEMS INC.,<br><br>Plaintiff,<br><br>v.<br><br>NETGEAR, INC.,<br><br>Defendant. | Miscellaneous Case No.<br><br>Underlying Litigation:<br>Case No. 1:25-cv-01396-MN<br>(pending in the District of Delaware) |

**NON-PARTY ROBERT JOYCE'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION TO QUASH SUBPOENAS OR FOR A PROTECTIVE ORDER</u>**

DAVIS WRIGHT TREMAINE LLP
Chelsea T. Kelly (D.C. Bar No. 1045673)
1301 K Street NW, Suite 500 East
Washington, DC 20005
Phone: 202-973-4250
Email: chelseakelly@dwt.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

LEGAL ARGUMENT ........ 7

I. THE COURT SHOULD QUASH THE SUBPOENAS BECAUSE THEY SEEK INFORMATION REGARDING CLAIMS THE DELAWARE COURT HAS DISMISSED AND OTHER INFORMATION THAT IS IRRELEVANT TO THE SURVIVING CLAIMS IN THE UNDERLYING LAWSUIT. ........ 9

II. THE COURT SHOULD QUASH THE SUBPOENAS BECAUSE THEY UNDULY BURDEN NON-PARTY MR. JOYCE BY: (A) SEEKING DOCUMENTS AND TESTIMONY THAT ARE MORE PROPERLY SOUGHT FROM THE DEFENDANT IN THE UNDERLYING LAWSUIT, (B) SEEKING ATTORNEY-CLIENT PRIVILEGED DOCUMENTS, AND (C) SUBJECTING MR. JOYCE TO UNNECESSARY DISCOVERY. ........ 12

CONCLUSION ........ 15

CERTIFICATION OF MEET AND CONFER ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AF Holdings, LLC v. Does 1-1058*,
752 F.3d 990 (D.C. Cir. 2014)....................9

*Alexander v. FBI*,
1998 WL 1049005 (D.D.C. May 28, 1998)....................11

*Bolden v. City of Wilmington*,
2019 WL 1123008 (D. Del. Mar. 12, 2019)....................7, 11

*Coleman v. District of Columbia*,
275 F.R.D. 33 (D.D.C. 2011)....................8

*Darling v. Girard*,
2015 WL 13898434 (D.D.C. July 20, 2015)....................8

*Hancock v. Credit Pros Int'l Corp.*,
2021 WL 2948154 (D.N.J. July 13, 2021)....................9

*In re Shelton Fed. Grp., LLC*,
2018 WL 4482560 (Bankr. D.D.C. Aug. 21, 2018)....................9

*Linder v. Nat'l Sec. Agency*,
94 F.3d 693 (D.C. Cir. 1996)....................7

*Marshall v. U.S. Postal Serv.*,
88 F.R.D. 348 (D.D.C. 1980)....................14

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
894 F.2d 1318 (Fed. Cir. 1990)....................12

*Millenium TGA, Inc. v. Comcast Cable Comms., LLC*,
286 F.R.D. 8 (D.D.C. 2012)....................8, 13

*N.C. Right to Life, Inc. v. Leake*,
231 F.R.D. 49 (D.D.C. 2005)....................7

*People for Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*,
60 F. Supp. 3d 14 (D.D.C. 2014)....................12

*Phillips & Cohen, LLP v. Thorpe*,
300 F.R.D. 16 (D.D.C. 2013)....................10

*Pizana v. Sanmedica Int'l, LLC*,
2021 WL 1060440 (E.D. Cal. Mar. 18, 2021) ........ 9, 12

*Sourgoutsis v. United States Capitol Police*,
323 F.R.D. 100 (D.D.C. 2017) ........ 8, 12

*TP-Link Systems Inc. v. Netgear, Inc.*,
No. 1:25-cv-01396-MN (D. Del.) ........ 5

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
202 F. Supp. 3d 1 (D.D.C. 2016) ........ *passim*

*US Dominion Inc. v. My Pillow Inc.*,
2024 WL 2880425 (D.D.C. June 7, 2024) ........ 11, 14

*Watts v. S.E.C.*,
482 F.3d 501 (D.C. Cir. 2007) ........ 13

*Wyoming v. United States Dep't of Agric.*,
208 F.R.D. 449 (D.D.C. 2002) ........ 8, 10, 13, 14

**Rules**

Fed. R. Civ. P. 9(b) ........ 4

Fed. R. Civ. P. 26 ........ *passim*

Fed. R. Civ. P. 45 ........ *passim*

Pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c)(1), non-party Robert Joyce ("Mr. Joyce") respectfully submits this memorandum of law in support of his motion (the "Motion") to quash the document and deposition subpoenas (the "Subpoenas") issued to him by the plaintiff in *TP-Link Systems Inc. v. Netgear, Inc.*, No. 1:25-cv-01396-MN, pending in the United States District Court for the District of Delaware (the "Underlying Lawsuit").[1]

## PRELIMINARY STATEMENT

The Underlying Lawsuit involves claims by TP-Link Systems Inc. ("Plaintiff" or "TP-Link") against Netgear, Inc. ("Defendant" or "Netgear") arising from allegedly defamatory statements that Netgear's CEO made regarding TP-Link's alleged ties to the Chinese Communist Party and the resulting national security threats that TP-Link's networking devices may pose to the American public. These statements mirror well-documented concerns about TP-Link raised by members of the U.S. Congress and the media. Unhappy with such coverage, TP-Link sued Netgear in an apparent attempt to silence its criticism of the company.

As part of its Underlying Lawsuit, TP-Link claimed "on information and belief" that Netgear has encouraged disparaging statements about TP-Link by third-party "members of the media and other commentators" including Non-Party Mr. Joyce, a distinguished and well-regarded cybersecurity expert. However, when the U.S. District Court for the District of Delaware ("the Delaware Court") ruled on Netgear's Motion to Dismiss the Complaint in the Underlying Lawsuit, it dismissed all claims arising from these alleged third-party statements—finding that TP-Link had not adequately alleged such claims. The Delaware Court allowed the case to proceed into discovery solely based on specific allegedly defamatory statements made by Netgear's CEO.

[1] Federal Rule of Civil Procedure 45 directs that motions to quash are to be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A) & (B). Here, the Subpoenas command compliance in Washington, D.C., and thus the United States District Court for the District of Columbia is the proper venue for this Motion.

In an apparent end-run around the Delaware Court's Order, TP-Link has now issued two far-reaching subpoenas to Mr. Joyce, seeking documents and testimony from him on the very claims the Court dismissed from the Underlying Lawsuit (*e.g.*, alleged communications between Mr. Joyce and Netgear and alleged communications about TP-Link) as well as topics that have nothing to do with the surviving claims in the case (*e.g.*, Mr. Joyce's alleged relationship with other third parties or general work as a cybersecurity expert). TP-Link even seeks attorney-client privileged communications from Mr. Joyce (*e.g.*, communications between Mr. Joyce and the undersigned counsel).

These Subpoenas are highly improper and must be quashed. They both impose an undue burden on a third-party under Rule 45 and are outside the scope of discovery under Rule 26. In particular, the Subpoenas (1) seek discovery regarding claims that the Delaware Court clearly dismissed from the case and other discovery entirely irrelevant to the Underlying Lawsuit; and (2) burden a third-party by seeking discovery that is more properly sought from the defendant in the Underlying Lawsuit and/or is attorney-client privileged. For these reasons, this Court should quash the Subpoenas in their entirety pursuant to Rule 45 and/or issue a protective order under Rule 26 forbidding the discovery requested.

## FACTUAL BACKGROUND

On November 17, 2025, TP-Link filed a Complaint against Netgear in the U.S. District Court for the District of Delaware. *See* Ex. 1 ("Compl."). In its Complaint, TP-Link asserted claims against Netgear for defamation, violation of the Lanham Act, breach of contract, and unjust enrichment, alleging that Netgear "made false and misleading accusations" that TP-Link and its products are infiltrated by the Chinese government (Compl. ¶ 2), in part to "give Netgear an unfair advantage in the marketplace…." (*id.* at 1). TP-Link's claims arise from allegedly defamatory

statements made by Netgear's CEO during earnings calls with Netgear investors. *See id.* ¶¶ 29-41.

It bears mention that the allegedly defamatory statements made by Netgear are consistent with broad public concern raised by members of Congress and the press regarding potential connections between TP-Link and the Chinese government. For example, *Bloomberg* has reported that, although TP-Link Systems has technically separated from Chinese-owned TP-Link Technologies Co., Ltd., the two entities maintain close connections—and TP-Link Systems "still has substantial operations in mainland China," including much of its "research, development and manufacturing operations" and 11,000 employees.[2] Similarly, in an August 13, 2024 letter to the Secretary of Commerce, Chairman John Moolenaar of the U.S. House of Representatives' Select Committee on the Chinese Communist Party and Ranking Member Raja Krishnamoorthi requested an investigation of TP-Link Technologies Co., Ltd. and its affiliates, calling its rapid gains in the U.S. market a "glaring national security issue."[3] The congressional letter also noted the "PRC government's common use of … routers like TP-Link to perpetrate extensive cyberattacks in the United States" *id.* at 2; and major news outlets like *Bloomberg* and *The Wall Street Journal* have similarly reported on the exploitation of TP-Link routers in Chinese state-backed cyber-attacks.[4]

In addition to challenging statements made by Netgear, TP-Link's Complaint also alleged in passing that "[on] information and belief, … Netgear encouraged, facilitated, contributed to,

---

[2] *See* Kate O'Keeffe, "Wi-Fi Giant TP-Link's US Future Hinges on Its Claimed Split from China," *Bloomberg*, Apr. 11, 2025, *available at* https://www.bloomberg.com/news/articles/2025-04-11/wi-fi-giant-tp-link-s-us-future-hinges-on-its-claimed-split-from-china?embedded-checkout=true.

[3] Letter to Secretary of Commerce Raimondo, Aug. 13, 2014, *available at* https://selectcommitteeontheccp.house.gov/sites/evo-subsites/selectcommitteeontheccp.house.gov/files/evo-media-document/2024-08-13%20Letter%20to%20Commerce%20re%20TP-Link%20%28filed%29.pdf at 3.

[4] *See, e.g.*, Heather Somerville, *et al.*, "U.S. Weighs Ban on Chinese-Made Router in Millions of American Homes," *Wall Street Journal*, Dec. 18, 2024, *available at*

and supplied the content for disparaging statements made about TP-Link by others, including members of the media and other commentators." Compl. ¶ 26. As an alleged example, the Complaint pled that Mr. Joyce, a "cybersecurity consultant who owns and operates the consulting firm Joyce Cyber LLC—published false and misleading statements on social media, in published interviews, and in other public forums that TP-Link's technologies are controlled by the Chinese Communist Party, that TP-Link products serve as a platform for the People's Republic of China to launch cyberattacks and present a security threat, and that these products get automatic software updates from the People's Republic of China." *Id.* ¶ 27. TP-Link did not identify any specific statements by Mr. Joyce in its Complaint. Paragraphs 26 and 27 of the Complaint are the only paragraphs that pertain to Mr. Joyce, and Paragraph 27 is the only paragraph that names him.

Netgear moved to dismiss TP-Link's Complaint, and on April 29, 2026, the Delaware Court heard argument on the motion to dismiss. *See* Ex. 2 (Tr. of April 29, 2026 hearing). The Court then ruled from the bench, granting in part and denying in part Netgear's motion to dismiss. In particular, the Court found that the "allegations concerning [Netgear's] statements on earnings calls … are pled with sufficient particularity" because the Complaint included "the date of the alleged misstatements, the speaker, specific quotes, and attaches transcripts containing the statements at issue." *Id.* at 28:3-8. By contrast, the Court found that:

> The allegations **concerning third-party statements, however, are lacking**. These are set out in paragraphs 26 and 27 of the Complaint. Although the Complaint identifies specific individuals who allegedly made these misleading statements, the Complaint does not provide quotes or identify when such statements were made. Nor does the Complaint allege any specific facts that would suggest Netgear coordinated with these individuals to spread misinformation. Rather, the Complaint simply states on 'information and belief' that Netgear used these individuals as mouthpieces. Under Rule 9(b), that is not enough. Therefore, **I will dismiss TP-Link's Lanham Act claim to the extent it is based on the third-party statements referenced in paragraphs 26 and 27 of the Complaint**.

---

https://www.wsj.com/politics/national-security/us-ban-china-router-tp-link-systems-7d7507e6; *see also* O'Keeffe, *supra* at n.2.

*Id.* at 28:9-23 (emphasis added). Based on the same reasoning, the Court dismissed TP-Link's defamation claim to the extent it was based on third-party statements:

> For Count III, the same reasoning holds for TP-Link's defamation claim.... Again, the Complaint does not quote any of the third-party statements, does not indicate when such statements were made, and does not explain why those statements should be attributed to Netgear. **So I will dismiss - without prejudice -TP-Link's defamation claim to the extent it is based on the third-party statements referenced in paragraph 26 and 27 of the Complaint**.

*Id.* at 29:1-13 (emphasis added).

Accordingly, the Court's bench ruling clearly dismissed from the Underlying Lawsuit any claims arising from alleged statements by third parties, such as Mr. Joyce. In fact, the Court specifically called out the only two paragraphs in the Complaint that pertained to Mr. Joyce (paragraphs 26 and 27) and dismissed TP-Link's claims arising from those paragraphs.

On June 11, 2026, Netgear filed its Counterclaims and Answer—none of which mention Mr. Joyce or in any way revive the Delaware Court's dismissed claims based on third-party statements. *See* Underlying Lawsuit, ECF No. 51. The Counterclaims are premised on TP-Link's own conduct: (1) violation of Lanham Act (based on TP-Link's alleged false and misleading statements related to the security and geographic origin/ manufacturing of its products); violation of Delaware's Deceptive Trade Practices Act (based on TP-Link's alleged misrepresentations of the security and origin of its products); (3) false advertising under California state law (based on similar assertions); and unfair competition under California state law (based on similar assertions). *See id.* ¶¶ 102-140.

Notwithstanding the Delaware Court's explicit dismissal of TP-Link's claims based on third-party statements, TP-Link has nonetheless issued a host of third-party subpoenas, including to Mr. Joyce. *See TP-Link Systems Inc. v. Netgear, Inc.*, No. 1:25-cv-01396-MN (D. Del.), ECF

Nos. 41-43, 52-53, 60. On June 4, 2026, TP-Link served Mr. Joyce with two subpoenas—one propounding **26** overbroad document requests (*see* Ex. 3, the "Document Subpoena") and the other seeking Mr. Joyce's deposition on **29** wide-ranging topics (*see* Ex. 4, the "Deposition Subpoena").

The Subpoenas seek documents and testimony regarding the very third-party allegations the Court dismissed from the Complaint—in particular, documents and information involving any alleged communications between Mr. Joyce and Netgear and any alleged statement by Mr. Joyce about TP-Link. *See, e.g.,* Ex. 3 at Request Nos. 1-9, 16-23; Ex. 4 at Topic Nos. 2-13, 15-17, 19. The Subpoenas also seek documents and testimony that are wholly irrelevant to TP-Link's surviving claims and Netgear's Counterclaims in the Underlying Lawsuit, including documents and testimony regarding Mr. Joyce's general work as a cybersecurity consultant, about his alleged communications with other third parties, and about the "Foreign Router Ban"—an agency action by the Federal Communications Commission announced after TP-Link filed the Complaint. *See* Ex. 3 at Request Nos. 10-14; Ex. 4 at Topic Nos. 14, 20-26. Finally, the Subpoenas further seek wholly irrelevant documents and testimony that are also protected by the attorney-client privilege between Mr. Joyce and his counsel—such as documents regarding his "receipt of and response to" TP-Link's litigation hold notice (Ex. 3 at Request No. 24) and documents concerning the undersigned counsel's response to a cease-and-desist letter from TP-Link's counsel (Ex. 3 at Request No. 25) that is not mentioned in, or the subject of, the surviving claims in the Complaint or the Counterclaims. *See also* Ex. 4 at Topic Nos. 18, 27.

On June 12, 2026, counsel for Mr. Joyce served responses and objections to the Subpoenas on TP-Link's counsel. *See* Ex. 5 (the "Responses and Objections"). The Responses and Objections (and the attached cover letter from Mr. Joyce's counsel) explained that the Subpoenas seek "documents and deposition testimony wholly outside the scope of discovery based on the

Court's clear bench ruling on April 29, 2026 (ECF No. 40) in which the Court dismissed the 'allegations concerning third-party statements … set out in paragraphs 26 and 27 of the Complaint.'" *Id.* at 1. The cover letter went on to state that "Plaintiff's current attempt to seek burdensome discovery from a third party in hopes of gathering information it can use to then amend its complaint is improper and 'would turn the pleading requirements set out in the Federal Rules of Civil Procedure on their head.'" *Id.* (citing *Bolden v. City of Wilmington*, 2019 WL 1123008, at *2 (D. Del. Mar. 12, 2019) (denying plaintiff's request for discovery to amend her complaint, noting "a plaintiff is first required to make factual allegations in her complaint that permit the 'plausible inference [that ... liability exists] before [she] can obtain discovery.' ... If she cannot do so, then her claim must be dismissed.")). The cover letter also requested that, in light of the Responses and Objections, TP-Link "hold in abeyance Plaintiff's request to depose Mr. Joyce until after any adjudication or other resolution of the disputed matter is reached, as such adjudication may well impact whether a deposition may proceed and/or the scope thereof." *Id.* at 1-2.

Following the service of Mr. Joyce's Responses and Objections to the Subpoenas, counsel for Mr. Joyce and counsel for TP-Link met and conferred to see if they could reach a resolution without court intervention. However, counsel eventually reached an impasse. This motion follows.

## **LEGAL ARGUMENT**

Federal Rule of Civil Procedure 45 vests this Court with "the authority to quash a subpoena that compels production of privileged documents or subjects the subpoenaed party to undue burden." *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). "The court has broad discretion in determining whether a subpoena is unduly burdensome…." *Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 695 (D.C. Cir. 1996). Courts determine undue burden by considering "a variety of factors, including relevance, non-party status, 'the need for the documents, the breadth

of the document request, the time period covered by [the] request, [and] the particularity with which the documents are described.'" *Darling v. Girard*, 2015 WL 13898434, at *4 (D.D.C. July 20, 2015). Further, the Court of Appeals for the D.C. Circuit has instructed "district courts to be 'generally sensitive to the costs imposed on third parties' when considering a motion to . . . quash[] pursuant to Rule 45, reminding us to consider 'whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Millenium TGA, Inc. v. Comcast Cable Comms., LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012); *see also Wyoming v. United States Dep't of Agric.*, 208 F.R.D. 449, 452-53 (D.D.C. 2002) ("Non-party status is one of the factors the court uses in weighing the burden of imposing discovery."). The Rule 45 standard "applies to both document and testimonial subpoenas." *Sourgoutsis v. United States Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017).

Likewise, Rule 26(b)(1) cabins permissible discovery to non-privileged information "that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). *See also Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011) ("[A] subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure."). And Rule 26(c) permits the court to issue protective orders to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). "Issuing a protective order is required when the party seeking discovery attempts to obtain information outside the scope of discovery." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016).

Here, the Subpoenas both impose an undue burden under Rule 45 and are outside the scope of discovery permitted by Rule 26 because they: (1) seek discovery related to claims that the Delaware Court has already dismissed from the case and other discovery that is entirely irrelevant

to the surviving claims and counterclaims in the Underlying Lawsuit; and (2) burden a third-party by seeking discovery that is more properly sought from the defendant in the Underlying Lawsuit and is attorney-client privileged. For these reasons, this Court should exercise its discretion to quash the Subpoenas in their entirety pursuant to Rule 45 and/or issue a protective order forbidding the discovery requested under Rule 26.

## I. THE COURT SHOULD QUASH THE SUBPOENAS BECAUSE THEY SEEK INFORMATION REGARDING CLAIMS THE DELAWARE COURT HAS DISMISSED AND OTHER INFORMATION THAT IS IRRELEVANT TO THE SURVIVING CLAIMS IN THE UNDERLYING LAWSUIT.

"[I]f a discovery request is irrelevant, then the request is an undue burden, and the subpoena must be quashed under Rule 45(d)(3)(A)." *In re Shelton Fed. Grp., LLC*, 2018 WL 4482560, at *2 (Bankr. D.D.C. Aug. 21, 2018); *see also AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) ("Rule 45(d)(3)(A) requires a district court to 'quash or modify a subpoena that ... subjects a person to undue burden.' If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain?"). Indeed, "it is a generally accepted rule that standards for non[-]party discovery...require a stronger showing of relevance than for simple party discovery." *Pizana v. Sanmedica Int'l, LLC*, 2021 WL 1060440, at *2 (E.D. Cal. Mar. 18, 2021); *see also Hancock v. Credit Pros Int'l Corp.*, 2021 WL 2948154, at *8 n.16 (D.N.J. July 13, 2021) ("[T]he standards for nonparty discovery require a stronger showing of relevance than for simple party discovery.").

Here, all documents and testimony sought by the Subpoenas are clearly irrelevant to the surviving claims and defenses in the Underlying Lawsuit. Because the Delaware Court dismissed all claims concerning Mr. Joyce and his alleged statements regarding TP-Link, discovery related to Mr. Joyce and these statements is no longer "relevant to any party's claim or defense and

proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). The Delaware Court's Order was not ambiguous—it specifically dismissed the "allegations concerning third-party statements ... set out in paragraphs 26 and 27 of the Complaint." Ex. 2 at 28:9-29:13; *see also id.* (dismissing Plaintiff's Lanham Act claim "to the extent it is based on the third-party statements referenced in paragraphs 26 and 27" and Plaintiff's "defamation claim to the extent it is based on the third-party statements referenced in paragraphs 26 and 27 of the Complaint."). Paragraph 27 is the only paragraph in the Complaint that references Mr. Joyce—thus, the Court clearly dismissed all claims related to him. The surviving claims in the Underlying Lawsuit relate solely to statements made by Netgear's CEO during earnings calls—not statements by Mr. Joyce.

The Subpoenas also fail to seek evidence relevant to disproving Netgear's Counterclaims, as these Counterclaims are premised on ***TP-Link's own conduct***, which TP-Link has full access to. The Counterclaims nowhere mention Mr. Joyce.

Accordingly, the Subpoenas seek wholly irrelevant information from a non-party and should be quashed or a protective order issued on that basis. *See All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d at 7 (granting motion for protective order upon finding that the "communications are not relevant in this case because no claim or defense has been asserted that touches on those records"); *Wyoming*, 208 F.R.D. at 454 (granting non-parties' motions to quash subpoenas where "the requested documents fall outside the scope of discovery needed for Wyoming to prove its claim ... [and] are irrelevant to the plaintiff's claim."); *Alexander v. FBI*, 1998 WL 1049005, at *1 (D.D.C. May 28, 1998) (quashing third-party subpoena upon concluding, *inter alia*, "that the documents, records, and other materials sought by plaintiffs, including the deposition testimony ..., are largely irrelevant to the matters at issue in this case...."); *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013) (quashing non-party subpoena that

"seek[s] documents which are of no conceivable relevance in the context of the action now pending in the District of Massachusetts….")." This conclusion is equally applicable to the Deposition Subpoena as it is for the Document Subpoena. *See US Dominion Inc. v. My Pillow Inc.*, 2024 WL 2880425, at *5 (D.D.C. June 7, 2024) (quashing third-party deposition subpoena upon finding that the "[t]he testimony that Lindell seeks from Wells and Negroponte is not relevant to a claim or defense in the *Dominion* Litigation.").

To the extent that TP-Link may argue that it seeks discovery of Mr. Joyce to amend its Complaint to re-assert the claims that the Delaware Court dismissed based on third-party statements, such an argument "would turn the pleading requirements set out in the Federal Rules of Civil Procedure on their head", which require a plaintiff to first "make factual allegations in [its] complaint that permit the 'plausible inference [that ... liability exists] before [it] can obtain discovery." *Bolden*, 2019 WL 1123008, at *2. In this regard, *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 7–8 (D.D.C. 2016) is instructive. In that case, the U.S. moved for a protective order barring a claimant's discovery requests—arguing in part that the claimant was improperly seeking discovery related to defenses that he had not yet pleaded. The claimant "urge[d] the Court to grant him this discovery because he need[ed] it in order to determine whether he should plead these defenses" (*id.* at 8); but the Court found that "Claimant has the matter backwards"—and "under our pleading rules, Claimant must assert his defenses in his Answer before he can ask Plaintiff to respond to discovery requests concerning them." *Id.* Indeed, the Court found that "Claimant cannot lead a fishing expedition to find material that might possibly become relevant to an as-yet unpleaded … defense … that must be pleaded to be pursued." *Id.* at 7. Accordingly, the Court granted the motion for a protective order. *Id.* at 9-10.

As in that case, this Court should quash the Subpoenas or issue a protective order, since the Subpoenas are a transparent "fishing expedition" to obtain discovery in order to amend TP-Link's Complaint to reassert claims the Delaware Court has dismissed. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim."); *People for Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 60 F. Supp. 3d 14, 20 (D.D.C. 2014) (rejecting as a "fishing expedition" the plaintiff's argument on a motion to dismiss that it should receive discovery on its allegations before determining whether they state a claim); *Millennium TGA, Inc.*, 286 F.R.D. at 16 ("[T]he federal courts, and its subpoena power, are not to be used to gather information that is only relevant to invalid claims, for that is tantamount to a fishing expedition.").

In short, all of the information sought in the Subpoenas is irrelevant because it pertains to the claims that the Delaware Court expressly dismissed from the Underlying Lawsuit or has no relevance to the surviving claims and counterclaims. Accordingly, TP-Link cannot come close to meeting the "stronger showing of relevance" required for non-party discovery—let alone the standard showing of relevance. *Pizana*, 2021 WL 1060440, at *2. The Subpoenas should be quashed and/or a protective order issued forbidding the requested discovery.

## II. THE COURT SHOULD QUASH THE SUBPOENAS BECAUSE THEY UNDULY BURDEN NON-PARTY MR. JOYCE BY: (A) SEEKING DOCUMENTS AND TESTIMONY THAT ARE MORE PROPERLY SOUGHT FROM THE DEFENDANT IN THE UNDERLYING LAWSUIT, (B) SEEKING ATTORNEY-CLIENT PRIVILEGED DOCUMENTS, AND (C) SUBJECTING MR. JOYCE TO UNNECESSARY DISCOVERY.

Courts "must limit the extent of discovery that is, *inter alia*, unreasonably cumulative or duplicative, outside the permitted scope of Rule 26(b)(1), or obtainable from another source that is more convenient, less burdensome, or less expensive." *Sourgoutsis*, 323 F.R.D. at 107 (citing

Fed. R. Civ. P. 26(b)(2)(C)); *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) (noting Rule 26(b)(1-2) "requires district courts … to consider … whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive'"). Courts similarly regularly quash non-party subpoenas under Rule 45 where "the discovery sought is obtainable from another source that is more convenient, less burdensome, and less expensive", especially "considering the non-party status of the witnesses." *Wyoming*, 208 F.R.D. at 454-55. And Rule 45 also requires courts to quash subpoenas that seek "disclosure of privileged or other protected matter…." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Here, the Subpoenas are unduly burdensome on Mr. Joyce—a third party solo consultant with only one part-time administrative assistant—who would be forced to expend substantial time and resources responding to these overbroad Subpoenas. *See Millenium TGA, Inc.*, 286 F.R.D. at 11 (noting district courts should be "'sensitive to the costs imposed on third parties' when considering a motion to . . . quash[] pursuant to Rule 45…."). The Subpoenas are overbroad in part because they seek documents and testimony that are more properly sought from the defendant in the Underlying Lawsuit, Netgear. For example, Document Subpoena Request Nos. 1, 10, 11, 13-14, 16-17, 22-24 and Deposition Subpoena Topics Nos. 2, 4, 13-16, 18, 21-24 seek communications between Mr. Joyce and Netgear or involving Netgear—yet, TP-Link has made no showing that it has even attempted to seek these same communications from Netgear. *See Wyoming*, 208 F.R.D. at 454-55 (quashing third-party subpoenas upon finding that "the plaintiff can obtain the information needed to proceed on its … claim from the … defendants and it has not shown that it has made reasonable attempts to obtain the information elsewhere before asking for this extraordinarily broad discovery request of the non-party witnesses.").[5] Moreover, because

[5] To the extent that the other requests in the Subpoenas seek documents or testimony from Mr. Joyce that does not relate to communications with Netgear—those requests are even further irrelevant to any claim or

any statements by Mr. Joyce are no longer at issue in the case, it is possible that Netgear may argue that any such communications with Mr. Joyce are outside the scope of permissible discovery—in which case, that is a matter that should be adjudicated before the Delaware Court instead of burdening Mr. Joyce (a non-party) with such premature disputes. *See All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d at 7 (declining to adjudicate "premature" dispute regarding discovery where the judge in the underlying lawsuit had "not determined whether Claimant's action … to lift the restraint may proceed.").

Indeed, since the only allegedly defamatory statements that remain at issue in the Underlying Lawsuit were all made by Defendant's CEO, it is his knowledge that should be sought in the first instance, and not that of non-party Mr. Joyce. *See, e.g.*, *US Dominion Inc.*, 2024 WL 2880425, at *7 (denying defendants' motion to compel third parties to testify, noting "the information that [defendant] Lindell relied on to make" the allegedly defamatory statements "is known to Lindell….").

Finally, the Subpoenas should additionally be quashed as unduly burdensome to Mr. Joyce to the extent that they seek information that is protected by the attorney-client privilege between Mr. Joyce and his undersigned counsel and/or the attorney work product doctrine. *See* Ex. 3 at Request Nos. 24, 25 (seeking documents regarding Mr. Joyce's "receipt of and response to" TP-Link's litigation hold notice and documents concerning the undersigned counsel's response to a cease-and-desist letter from TP-Link's counsel); *see also* Ex. 4 at Topic Nos. 18, 27. Such requests should be quashed as seeking privileged information. Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also Marshall v. U.S. Postal Serv.*, 88 F.R.D. 348, 351 (D.D.C. 1980) (granting motion to quash

---

defense in the case for the reasons addressed *supra*. The Underlying Lawsuit is now limited to claims arising from a handful of statements made by Netgear's CEO and Counterclaims arising from TP-Link's own conduct.

subpoena seeking testimony concerning "the content of privileged communications between [attorney] and his clients"). Even if these documents and testimony were not privileged, they would still be inappropriate for disclosure as irrelevant. Since only statements made by Netgear's CEO remain at issue in the Underlying Lawsuit, there is no conceivable relevance to these discovery requests.

## CONCLUSION

For the foregoing reasons, the Court should enter an order pursuant to Federal Rule of Civil Procedure 45 quashing the Subpoenas and/or an order pursuant to Federal Rule of Civil Procedure 26(c) imposing a protective order forbidding the discovery sought by the Subpoenas.

## CERTIFICATION OF MEET AND CONFER

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and Local Rule 7(m), the undersigned movant has in good faith conferred with counsel for Plaintiff TP-Link in an effort to resolve the dispute without court action, as described *supra* at page 7.

Dated: July 15, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
Chelsea T. Kelly (D.C. Bar No. 1045673)
1301 K Street NW, Suite 500 East
Washington, DC 20005
Phone: 202-973-4250
Email: chelseakelly@dwt.com

*Counsel for Non-Party Robert Joyce*

# CERTIFICATE OF SERVICE

I certify that on this 15th day of July, 2026, I served a copy of the foregoing document on counsel of record in the Underlying Lawsuit for Plaintiff TP-Link Systems Inc. and Defendant Netgear, Inc. via electronic mail, pursuant to agreement by counsel for Plaintiff TP-Link Systems Inc. and counsel for Defendant Netgear, Inc.:

| | |
|---|---|
| Brian P. Egan<br>Ben Yenerall<br>Cameron Paul Clark<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>302-351-9454<br>Email: began@mnat.com<br>Email: byenerall@morrisnichols.com<br>Email: cclark@mnat.com<br><br>Hannah Geis<br>Gregory S. Arovas<br>Todd M. Friedman<br>Rachel M. Fritzler<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800<br>hannah.geis@kirkland.com<br>greg.arovas@kirkland.com<br>todd.friedman@kirkland.com<br>rachel.fritzler@kirkland.com<br><br>Luke L. Dauchot<br>KIRKLAND & ELLIS LLP<br>2049 Century Park East, Suite 3700<br>Los Angeles, CA 90067<br>(310) 552-4200<br>luke.dauchot@kirkland.com<br><br>Yungmoon Chang<br>KIRKLAND & ELLIS LLP<br>695 Town Center Drive, Suite 1700<br>Costa Mesa, CA 92626<br>(310) 552-4200<br>yungmoon.chang@kirkland.com | Katharine L. Mowery<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>mowery@rlf.com<br><br>Robert K. Hur<br>KING & SPALDING LLP<br>1700 Pennsylvania Avenue, NW Suite 900<br>Washington, DC 20006<br>rhur@kslaw.com<br><br>Joshua Eric Roberts<br>Jennifer S. Recine<br>Amy Nemetz<br>KING & SPALDING LLP<br>1290 Avenue of the Americas 14th Floor<br>New York, NY 10104<br>jroberts@kslaw.com<br>jrecine@kslaw.com<br>anemetz@kslaw.com<br><br>*Counsel for Defendant Netgear, Inc.* |

| | |
|---|---|
| David Rokach<br>KIRKLAND & ELLIS LLP<br>333 West Wolf Point Plaza<br>Chicago, IL 60654<br>(312) 862-2000<br>david.rokach@kirkland.com<br><br>Stephen C. DeSalvo<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue NW<br>Washington, DC 20004<br>(202) 389-5000<br>stephen.desalvo@kirkland.com<br><br>*Counsel for Plaintiff TP-Link Systems, Inc.* | |

Dated: July 15, 2026

Chelsea T. Kelly